May it please the court and good morning. My name is George Neuhausen. I represent Atlantic Inertial Systems, otherwise referred to as AIS. Your Honors, this case presents an application of the time-honored legal maxim, where there is a wrong, there should be a remedy. In this case, there was a wrong, a clear wrong, the adjudicated misappropriation of AIS's intellectual property, per the district court's ruling below the terminating sanctions order. The district court, having ruled affirmatively, that defendant Condor Pacific II and Mr. Meltzner took and used AIS's trade secrets, protected proprietary information, dealing with the construction of these various gyroscopes, the rate gyroscopes, Your Honors, that were part of the so-called Westlake Village Line. Counsel, let me start by asking you what is sort of a consternation for me in this case. I think the complexity to me arises because there's a sanctions order saying liability is established, but then there's a jury verdict saying there was no harm to the plaintiff. And those two things are very difficult to square logically, but the jury did find the absence of harm. And it could have done so in a number of theories, one of which would have been abandonment of these particular small-sized gyroscopes and probably some other theories as well. How do we make those two things live side by side? Well, first, Your Honor, and I think you've gone to the heart of the case, first of all, the jury instruction that the jury answered did not necessarily entail that the jury found no harm. The instruction was, instruction number eight at Excerpt of Record 824. Instruction or special verdict? Strike that, I'm sorry. The special verdict, number eight, correct, said, was the plaintiff harmed by plaintiff's misappropriation of plaintiff's drawings and associated technical performance data and, and there is a conjunctive, was defendant's misappropriation a substantial factor in causing harm, if any, to the plaintiff? And as the district court pointed out, this was not an instruction of great clarity, but it allowed for the possibility that the jury, one, found no harm, or two, they found harm, but they believed, as I think is the case, that it wasn't a substantial factor in causing harm to AIS, apparently because the jury believed, Your Honors, that BAE and AIS was not interested in producing this 12,000 series gyroscope. And so having been sold on the defense theory that, gee, AIS doesn't want to make these things, the government wants to procure them, and here's Mr. Meltzner and Condor II coming in and they're willing to produce this gyroscope, it's understandable how the jury could have decided they weren't really harmed because they didn't lose sales on something that they didn't want to make. But counsel, there was no challenge to the jury findings, is that correct? There was no challenge. We did not file a Rule 59 motion seeking a new trial. That was a deliberate decision that AIS made. But our position is, and this is why we're here this morning, we didn't need to because there were two trials. The first trial concluded with the jury's decision, which we obviously disagree with, as to count five, and we're not challenging that. We didn't file a Rule 59 motion. We went to the court and we said to the judge, Your Honor, that's fine. We disagree. We respectfully disagree, but that's the jury system. Now we'd like you, Your Honor, the court, to decide count six, the unfair competition, the statutory unfair competition claim. We'd like you, Your Honor, to rule on our motion for an injunction under CUTSA and under the 17-200. That's the remedy of preference. And that was the reason, respectfully, why we were in court in the first place. The 12,000 series gyroscope, there's no dispute. It had value. The intellectual property that Mr. Meltzner took had value. But it didn't have great value to BAE. But nonetheless, BAE and AIS own the right, if you will, to stop Mr. Meltzner from using property that he took improperly. Here's what I don't understand. If the jury so the claim that was decided by the jury was based on CUTSA? CUTSA, yes. Count five. So that was premised on misappropriation of trade secrets, right? Correct. So if the jury found against your client on that, how could you then ask the judge to rule on claims that were also premised on misappropriation of trade secrets? Even though they were statutory, they also were based on the same premise that the jury had decided against your client. So how could the judge go against the jury verdict and decide those claims anew? And, Your Honor, that's the central question to this appeal. The answer to your question, Your Honor, is the claims were not the same. The legal theory and the factual predicate for count six, for example, the unfair competition claim 17-200, was separate and apart from misappropriation. Now, mind you, the misappropriation, which was, of course, adjudicated liability, that was part of the 17-200 claim, but it was only part of it. It also included unfair and unlawful competition. It is clearly unfair. The unfair and unlawful competition was predicated on the misappropriation of the trade secrets. Not entirely, Your Honor. I respectfully disagree. Not entirely. In part, yes. But in part, it was the broader. 17-200, Your Honor, is a very broad statute. It has a very broad remedial impact. And the issue was, and that's what the district court erroneously believed, that it was bound by the jury's finding on a separate and distinct count. But for 17-200, there has to be an unlawful predicate. So what was, other than the misappropriation of the trade secrets, what was the unlawful act that the 17-200 claim was based upon, if it was not the misappropriation of trade secrets? A clear, adjudicated misappropriation of AIS's intellectual property. No question. The judge ruled that it was established, and as a result, when we went into trial, we didn't have to prove it. In fact, we're prevented from further producing evidence relating to the misappropriation. But that's not all. There was more. Mr. Meltzner used the same name when he started the company back up. He used the same part numbers. That was the Lanham accounts that the jury did rule against us. He sent letters, and this is in the record, correspondence to customers saying, we're back in action. It's the same company. Wasn't that all the evidence that was presented to the jury? The jury heard this. Right. But the judge also heard it. There were two trials, Your Honor, Your Honors. There were two trials. There was a trial to the bench under 17-200, and there was a jury trial. And there's no question we lost the jury trial, but we went back. And, you know, when we made our motion, finally, in fact, frankly, when the trial ended, the court went off the bench, and we expected to be called back for the further proceedings, the trial before the jury, and we heard nothing. We had to make a motion for final adjudication to remind the district court that we were entitled to a separate, her separate determination as to damages and remedies under the 17-200. Counsel, speaking of damages and remedies, was there evidence presented of unjust enrichment as distinct from damages? And if so, what was it? There were two experts. Our expert calculated unjust enrichment in excess of a million dollars. Their expert disagreed, although, mind you, again, on damages, their expert calculated damages based on the liability finding of 220. Oh, not damages. I'm asking about unjust enrichment. Okay, I'm sorry. Let me go directly to that. Their expert said, well, unjust enrichment would be zero because the company, which was a start-up company, again, was losing money, and if a company doesn't make any profits, their expert determined there's no unjust enrichment. Our expert disagreed, but that's what the jury heard. Unjust enrichment was zero because Mr. Meltzer and Condor, too, were losing so much money. Can I ask on the 17-200, please? Yes. Let's say that we were going to excise the misappropriation predicate for that, right? And you've alluded to this other unfair conduct that Meltzer was engaged in. So let's say we focus just on that as the basis for your 17-200 claim. What was the restitution under 17-200 that you proved you were entitled to? Well, restitution is a very broad concept, Your Honor, and I think similar to a reasonable royalty. If I take property that belongs to you, even if it's property that from the moment you don't necessarily value, but you unquestionably own it, you have the right to exclude someone else from using it, and I use it, and I make a product, and I sell that product, that's what Wycutza specifies, that an alternative remedy is this reasonable royalty. So restitution would be what I would have received had we entered into a licensing agreement. That's what I'm stuck on because I don't think 17-200 restitution encompasses that kind of award. It's talking about property that you've given over to the defendant that you want back, and I just don't see that based on the use of the name, I guess you said, and I don't know what, calling up customers and saying we're back in business. We're back in business, same company, same location. I don't see what is it that you would have been entitled to get back as your property. At a minimum, Your Honor, we would be entitled to some compensation for the use of the intellectual property, and that would be a licensing fee. Yeah, I agree. No, and believe me, I've got issues on reasonable royalty, but I'm just focusing on the 17-200 because the very specific definition of restitution that California uses under that statute, I just don't see how it maps on to what you've said here. But it has to be a broad remedy, Your Honor, because if it's limited to, particularly when you're dealing with intangible right, it's not like I took your car or I took a painting. I took something that has a certain amount of value and I get that, either I get that article back or I get the value for it. AIS continues to have the intellectual property. They have the drawings. They have the prints. Mr. Melsner, through his duplicity, kept his own copies. So it's an intangible right. Restitution doesn't apply in the normal sense, but I think it's broad enough in this circumstance in their cases interpreting California to say that can include, for example, your profits, what you made, if not necessarily your revenues, to some measure short of all of the revenues that would compensate the plaintiff company for the loss of its intellectual property. But, again, you keep going back to the use of the drawings, the use of the intellectual property, and I'm saying I don't think that's going to be part of the 17200 award you would have been entitled to. All you've told us about is they use the same name as they did before, but your client never used that name, so I don't see where the basis for confusion is there. And they called up customers and said, we're back in business. And you're saying based on that unfair conduct, you were entitled to all of their profits as restitution? They used the name that had been sold. They used the intellectual property, the know-how, the drawings to make products. They used the same pricing information, and they operated out of the same place of business. And, of course, let's focus. The unfair aspect that's the key here is, of course Mr. Melsner could sell these products for less money because he never had to pay for, at least in this instance, the development of the intellectual property, which in these kinds of businesses can be a very expensive component of the cost. Well, why wouldn't that be subject to compensation under the royalty rubric as opposed to the 17200? And I think, Your Honor, that would have been a fair outcome. If the district court had exercised her duty to independently decide the damages, because remember, injury in fact under 17200 is not commensurate. It's not the same as harm under CUTSA or harm under a different, there could be a different measure of harm. In this case, we believe reservable royalty would be one. And, of course, the other issue that the whole case turns on is having found and believed that the court was bound by the jury's erroneous verdict of no harm, the court refused basically to award the equitable relief, the injunction, which is what AIS really sought. AIS brought this lawsuit not to recover a million dollars of damages, but to stop a competitor from using intellectual property that was no longer his to make products that competed directly. And one of the products, and the jury heard this proof, was the 11700 gyroscope. We cite it in our briefs. Counsel, you're down to about a minute and a half if you want to save any time for rebuttal. I would like to reserve time if I could. Thank you, Your Honor. Thank you. Good morning. May it please the Court, I am here on behalf of the defendants. The opposing counsel started off with the old adage about for every wrong there's a remedy. But we respectfully submit that that's not true where there's no harm and where there's no causation. And that's what the jury found here, that the plaintiff presented all the things they've talked about this morning. And the jury found, having heard all of that evidence, there was no harm and there was no causation here. And that is essential to their having a case. Counsel, the one area of law that I have a big question mark about, and this may just reflect my own ignorance of California law, and that has to do with the concept of a royalty. And much to my surprise, apparently at least in federal patent law, one can get a royalty even without any showing of harm. And although California law seems to be a little bit convoluted in this respect, there is something both statutory and in the case law that suggests the possibility that a royalty is owed, even if there is no harm proved or provable. So what is your view on the premise that I've just stated? Certainly, Your Honor. Before I directly answer your question, let me start with our first two arguments, which were in our brief and which there was no response to. And they are these. There is nothing in the complaint or the pretrial order that asks for a royalty. Well, they do ask for such other and further relief as may be appropriate or phrase to that effect. And their expert did testify about what a reasonable royalty would be. So the issue was at least theoretically potentially in the case. So I'd like you to answer the substance of my question. I will, Your Honor. May I just say one thing, though, which is their expert only put something about royalties in his supplemental report after the trial to the jury was over. That was way past the deadline for them to put anything in their expert report. They had no right to submit a supplemental report and then ask for royalties. But the district court didn't ding them on royalties on that basis. So I would like to hear an answer to the judge's question. Yes, and I'm happy to do that. And it's this. Opposing party relies heavily on this Ajaxo case. And they quote this portion of the case, and so do we. They quote it at page 40 of their opening brief. We have it at page 52 of our opposition brief. And here's what the court says. It says, quote, If the plaintiff doesn't prove unjust enrichment to the jury, the trials court still has to decide whether plaintiff has suffered any measurable loss before the reasonable royalty remedy would become available. That is, they have to show a measurable loss, according to this case, before there's any royalty remedy available. But that's not what the statute says. It says, If neither damages nor unjust enrichment caused by a misappropriation are provable, pardon their bad use of the verb there, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited. So the very premise of the statute seems to me that you have not proved damages or unjust enrichment caused by misappropriation. Well, Your Honor, that's not what the court held in that case. What I read to you is what the court squarely and unequivocally held, which was you have to prove a measurable loss under California law before you can get to any royalty issue. Even if we assume that's true, was the plaintiff in this case given the opportunity to demonstrate royalty damages? No. Well, were they given the opportunity? Like I said before, it wasn't even in the complaint or the pre-trial order and so on, or in their expert report. But setting that aside, the fact of the matter is, under California law you do not get to royalties at all unless and until you show at least some measurable loss. That's what this case says unequivocally. It's the leading case that our opponents rely on to prove royalties here. And that's, I submit, that California law is binding on this court at this stage, that you have to have some kind of measurable loss before you can go forward with that. In addition, on the question of what their expert said, their expert even said that a royalty is not a reasonable methodology in this case, that it wasn't the way to get to damages. They were seeking lost profits, which they were unable to prove here. So that's why they... Well, unable to prove takes us right back to my question, which is, and Ajaxo does say this, that they are looking at a very practical view of what it means to have damages and unjust enrichment not provable. And they list it could be theoretical or it could be practical. So it almost seems like you're making the case for them by saying they were unable to prove damages, they were unable to prove unjust enrichment, and of course they might have preferred that, but... Yeah, but they end up in this odd position, Your Honor, if you accept that, which is if you don't put on a case, you get royalties. That's their position, essentially. So if you put on a case and you're unsuccessful, then you also have the opportunity for royalties. That's what it seems like. It's weird, but it seems like that's what the statute is saying. Well, I think the plaintiff's position is either we don't put it on or we're unsuccessful, but we get royalties no matter what. Well, once misappropriation is established, as I say, that seems counterintuitive, but this wouldn't be the only area of law where that occurs because the concept of misappropriation or the concept of using someone else's property is even if they're not using it, they have a right to exclude others from using it. If it leads to some kind of harm to them, of course. But that's what the jury found here. It didn't lead to any kind of harm to them. That is, the use of these drawings did not harm them. That's what the jury found as a matter of fact. I guess I'm confused by your reading of EJACSO because I read it just the other way, which was to say that the real issue there was the plaintiff had tried to prove up unjust enrichment and had failed. One reading of provable might be to say, well, if you try and fail, that doesn't mean the damages weren't provable. It just means you just struck out, and so you're not entitled to a royalty. But what EJACSO held is that, no, if you go to trial and you try to prove up a particular form of damages and you are unsuccessful because the jury gives you zero, that then leads you to the alternative remedy of reasonable royalty. And I would think that the analysis in EJACSO would apply both to unjust enrichment and to actual damages in the form of lost profits and the like. Except, as I quoted from EJACSO, that's not what it says. It says you must prove a measurable loss to get royalties. I was trying to find that exact language. What page in the opinion is it on? Sure, let me give you that. Maybe I didn't focus on the right language. It's on page 1313. Can you read it again? I'll try to find it while you're... Well, on the copy I've got here, I don't know if it's the same as what you've got. It's at the bottom of the page. Here's what it says. It says, thus, having talked about the statutory language that Your Honor quoted, it says, thus, for example, if a plaintiff is unsuccessful in proving unjust enrichment before the jury, the trial court would still have to decide whether the plaintiff suffered any measurable loss of its own before the reasonable royalty remedy. And all that is saying is that you have to show that you can't prove either unjust enrichment or some kind of an actual loss before reasonable royalty becomes available. I respectfully disagree. It says that the trial court would still have to decide whether the plaintiff suffered any measurable loss. Right, because if it did, you would not be entitled to a reasonable royalty. That's what it says. Because it dealt only with one of the two halves. I read it the same way that Judge Watford did. But obviously we'll have to go back and read it again. But just speaking only for myself, I just have some difficulty seeing how I understand absolutely everything from your perspective except for the royalty question, which seems to me very difficult for your position. Well, but the royalty has to be, even the opposing counsel in their brief, says to prove a trade secret claim in California, there are four elements, and one of those elements is harm. That's the Cytodyne case, C-Y-T-O-N-E. Well, Cytodyne was really about something else. I mean, it was about whether there was a misappropriated trade secret in the first place. It never really got to the rest of it. I understand, but it set out the elements of the cause of action in California. There aren't any cases that I'm aware of that opposing counsel cited that says that you can prove a trade secret claim in California even though there's no harm. Well, as I said at the beginning, what makes this so difficult is that as a matter of the law of the case, liability was established, and so there is that hurdle for you. Right. So if we have a situation in which, as a matter of sanctions, the district court has held that you are liable, then it seems very difficult to come up against this royalty question and then say, well, but the standards for liability were never met, and that's kind of what you're saying. No, we're not saying the standards were liable. We're not contesting the sanctions order. Well, if that's true, then your liability has been established, and the only thing that remains is to figure out if a reasonable royalty is owed because of that liability. I guess we're kind of going around in circles. Well, we are, but I guess regardless of what, I've forgotten now the name of the cytidine, or whatever it was, regardless of what it says is required to establish liability. Liability has been established in this case as a matter of the law of the case by the sanctions order, which you're not challenging. I understand that, Your Honor, but my point is cytidine says you ought to make out a trade secret case. There are four elements, and the fourth element is harm, and the jury found there was no harm here based on our argument about abandonment. That negates the role of the trial court that's in the JAXA. I mean, even once the jury finds no harm, the trial court still has the obligation to determine if there are royalties payable. The jury's out of it at that point. Not if you have to have harm to have a cause of action. But if we accepted that argument, you would never be entitled to a reasonable royalty, right? If we accept, let's say we reject your reading of a JAXA, which I'll just tell you I do. I just read it differently. But if I understand a JAXA to say that in order to qualify for a reasonable royalty, you basically as the plaintiff have to strike out on both unjust enrichment and actual damages, right? In any case where the plaintiff has some harm, even if it's a dollar in damages, that would mean that you're not able to get a reasonable royalty. Right, but that's why I submit that your reading is incorrect because it leads to what I think is an absurd result, which is if the plaintiff proves a dollar in damages, that's what they get, a dollar, and they get no royalty. If they prove no damages, then they get a royalty that's presumably going to far exceed the dollar. So that doesn't, I submit, doesn't make any logical sense to read it that way, to come out and say, oh, if you're successful in proving one dollar in damages, there's no royalty whatsoever. But the language has to mean something, right? Right. So you're saying it means what? The language in the JAXA means what in the context of having a jury verdict? I'm saying a JAXA requires that you prove at least some measurable harm, like that section that I wrote. It doesn't have to be quantified, and of course the jury here didn't quantify it because they said there was no harm, so they never got to the question of a number. But if you don't have any harm whatsoever, the jury found no harm and found that my client's conduct was not a substantial factor in causing any harm whatsoever to the plaintiff, then we submit that there's no recovery, whether it's called unjust enrichment damages. But the jury's not called upon to assess royalties damages, right? I understand. My point is that before you get to royalties, you've got to have some measurable harm, and the jury found no harm, no measurable harm. The jury instructions, though, define harm. You know, the court instructed them that they were to determine whether the plaintiff had suffered an actual loss, and I presume that means lost sales, lost profits of some sort, right? Right. So is that your... No, I'm not saying the jury decided royalty. There was no question about royalty. I'm just trying to... Your definition of harm, right, in terms of this being an element of the claim, is you've got to show that you've suffered some actual lost profits? Oh, no, because that... Okay, so... You've got to show some kind of injury, some harm. All I'm saying is that that's... It doesn't have to be lost profits. The answer to special verdict question number eight just tells me that the jury found that there was no actual loss in terms of profits to the... It's not what the question says. It says harm. It doesn't ask about lost profits. But the way the jury instructions define that term is not in terms of some metaphysical concept of harm. It's talking about actual loss in terms of lost profits. Well, right, because that's what the plaintiff put on as their harm. But what the jury said is there's no harm. We don't find any harm. Just harm in the abstract, totally divorcing the jury? No, it could have been harm to their reputation. It could have been harm... That's not what the jury instructions told them. I understand. I understand. All I'm saying is that the only thing they put on was the damages. And so the jury said there's no harm here of any sort. It's not what... I'm just saying you can only read into the answer to question eight framed by what the jury instructions say. The jury instructions did not define harm in the broad way you are. They defined it specifically in terms of actual loss. Because that's what they put on as evidence. Right, so they put nothing. So they had no actual loss of profits. And they put on no... They showed no other harm. So they had no harm. What other harm did they show? Nothing. So there was no harm. I think we understand your position, and you have exceeded your time. Thank you. So you have a little bit of rebuttal time remaining. Thank you, Your Honors. I think with all due respect to Mr. Henke, his interpretation, as the Court is focusing on, would effectively amend CUTSA because it would, under EJACO, we completely agree with you, there is an alternative measure. In instances where the plaintiff is unable to prove harm, as was the case here, the Court is required to go back and consider this other remedy. Now, why is the reasonable royalty not included in the first, if you will, expert testimony? That's because we wanted and felt we deserved lost profits, unjust enrichment. If you go with reasonable royalty, the jury may well go with a lesser remedy. That's why that's given to the Court. It's the charge of the Court in instances where, for whatever reason, jury sympathy, whatever the problem is, proof of harm is lacking. The trial court is mandated to go back and consider reasonable royalty. Under Rule 59B, the trial court, which was still conducting that jury trial, was allowed to reopen the proof. The Court received our expert submission. The Court received the defense expert submission on reasonable royalty. Both of those numbers were a positive number, and our position is it's illogical to say, well, the jury on a different measure of harm found no harm. Therefore, the trial court is not going to exercise its independent duty to find a reasonable royalty, as well as injunctive relief. Unless the Court has questions, I would respectfully submit. Thank you, counsel. The case just argued is submitted. Thank you, Your Honor. And we appreciate the arguments of both counsel. We will take about a ten-minute break.
judges: Graber, Rawlinson, Watford